IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
2:11cv35

| | |
|---|---|
| EARNEST WAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **Memorandum and** |
| ) | **Recommendation** |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for social security disability benefits. This case came before the Court on the administrative record, Plaintiff's Motion for Judgment on the Pleadings [# 11], and the Commissioner's Motion for Summary Judgment [# 15]. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 15], **DENY** the Plaintiff's Motion for Judgment on the Pleadings [# 11], and **AFFIRM** the Commissioner's decision.

## I. Procedural History

Plaintiff filed an application for disability benefits on August 27, 2009. (Transcript of Administrative Record ("T.") 22, 132-34.) In addition, Plaintiff filed an Application for Supplemental Security Income. (T. 22, 123-31) Plaintiff alleged that he became disabled beginning August 2, 2007. (T. 123, 132.) The Social Security Administration denied Plaintiff's claims, finding that he was not disabled. (T. 91-98.) Plaintiff requested reconsideration of the decision, which was also denied. (T. 99-104.) A disability hearing was then held before an Administrative Law Judge ("ALJ"). (T. 44-67.) The ALJ issued a decision finding that Plaintiff was not disabled. (T. 22-37.) The Appeals Council denied Plaintiff's request for review of the decision. (T. 1-3.) Plaintiff then brought this action seeking review of the Commissioner's decision.

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to

determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe impairment that significantly limits his ability to perform basic work-related functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his past relevant work; (5) whether the claimant is able to perform any other work considering his age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that the claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In his November 16, 2009, decision the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (T. 37.) The ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

(2) The claimant has not engaged in substantial gainful activity since August 2, 2007, the alleged onset date (CFR 404.1571 *et seq.* and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: lumbosacral degenerative disc disease and residuals of snakebite to the left thumb (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, I find that the claimant has the RFC to lift/carry a maximum of 25 pounds frequently and a maximum of 50 pounds occasionally, stand/walk for six hours and sit for six hours in an eight-hour workday. He can frequently climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently balance, kneel and crawl, and occasionally stoop and crouch. He has manipulative limitations consisting of a restriction to frequent handling and fingering with the left upper extremity.

(6) The claimant is capable of performing past relevant work as a carpenter and in salvage. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565 and 416.965).

(7) The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(T. 25-36.)

## VI. Standard of Review

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social

security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

V. Analysis[1]

A. **The ALJ did not err in Finding that Plaintiff's Occipital Neuralgia was not a Severe Impairment**

At step two of the five step evaluation process, the ALJ found that Plaintiff

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

had the following severe impairments: lumbosacral degenerative disc disease and residuals of snakebite to the left thumb (T. 25.) Plaintiff contends that the ALJ erred by not considering his occipital neuralgia and vision disturbances as an additional severe impairment. (Pl.'s Mot. Summ. J. at 13.) Occipital neuralgia, which is also knows as posttraumatic neck syndrome, is defined as "a clinical complex of pain, tenderness, tight neck musculature, vasomotor instability, and ill-defined symptoms such as dizziness and blurred vision as the result of trauma to the neck." Stedman's Medical Dictionary 1043, 1535 (25th ed. 1990).

The ALJ's determination as to whether an impairment is severe or not is a threshold determination. See 20 C.F.R. § 404.1520(c). An impairment is not severe "only if it is a *slight abnormality* which has such a *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal citation and quotation omitted) (emphasis in original); see also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 n.1 (4th Cir. 1999); 20 C.F.R. § 404.1521(a) ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). This is not a difficult standard for a claimant to satisfy. See Albright, 174 F.3d at 474 n.1; see also Stemple v. Astrue, 475 F. Supp. 2d 527, 536-37 (D.

Md. 2007) ("The severity standard is a slight one in this circuit . . . .").

On December 5, 2007, Plaintiff was involved in a motor vehicle accident and suffered a concussion. (T. 484, 472.) He also had optic nerve inflamation or swelling from the trauma from the accident. (T. 485.) As a result of this trauma, Plaintiff suffered intermittent headaches and intermittent blurring of his vision. (T. 489, 497, 500.) An MRI on December 28, 2007, however, showed no abnormalities of the brain itself or evidence of a subdural hematoma. (T. 473.) Dr. Anthony Esterwood also reported that Plaintiff was oriented to time, person, and place, had normal recent and remote memory, normal attention span and concentration, normal speech, and normal fund of knowledge. (T. 474.) Plaintiff's sensory exam was also normal. (Id.) Moreover, Plaintiff's occipital neuralgia improved over time and with treatment. (See e.g., T. 485, 478-82.) Finally, Plaintiff had full range of motion in his neck (T. 473, 844, 880), no neck stiffness (T. 862), and no neck pain (T. 879). In short, the record reflects that Plaintiff's occipital neuralgia and the related symptoms did not significantly limit Plaintiff's ability to do basic work activities and, thus, was not a severe impairment. 20 C.F.R. § 416.921; 20 C.F.R. § 404.1521. Accordingly, the Court finds that the decision of the ALJ to exclude occipital neuralgia from Plaintiff's list of severe impairments was supported by substantial evidence in the record.

Moreover, even assuming that the ALJ did err by not including occipital neuralgia as a severe impairment at step two, any such error was harmless. The ALJ specifically discussed Plaintiff's occipital neuralgia and the physical impairments he suffered as a result in assessing Plaintiff's residual functional capacity. (T. 28-36.)  The ALJ discussed the medical evidence in the record as well as Plaintiff's statements concerning the intensity and limiting effects of his occipital neuralgia. (Id.)  Because the ALJ specifically considered Plaintiff's occipital neuralgia in determining whether this impairment, either separately or in combination with his other impairments, rendered him unable to engage in substantial gainful activity, remand is not necessary in this case because any error at step two was harmless; remand would not lead to a different result. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); see also Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (applying harmless error doctrine in context of Social Security case).

### B. The ALJ's RFC Determination is Supported by Substantial Evidence in the Record

Plaintiff contends that the ALJ erred in determining Plaintiff's RFC.

Specifically, Plaintiff argues that the ALJ failed to explain the inconsistencies between his RFC and the opinion of Dr. Amy Rehfield, as required by SSR 96-8p. (Pl.'s Mot. Summ. J. 14.) Dr. Rehfield found that Plaintiff had upper extremity strength of 4/5 on the left side and 5/5 on the right.[2] (T. 439.) Plaintiff's grip strength measured 38 kg of force on the right and 24 kg on the left. (Id.) On the manual motoring test, Plaintiff's grip strength was 2/5 on the left and 5/5 on the right. (Id.) Plaintiff, however, was able to write with his dominant right hand, and pick up coins with either hand without difficult. (Id.) Finally, Plaintiff's range of motion of the joints of the fingers of both hands was normal. (T. 439.) Accordingly, Dr. Rehfield found that Plaintiff's "ability to grip on the left side as well as finely manipulate objects on the left appears to be moderately to severely impaired at present. The claimant's ability to perform carrying, lifting, pushing, and pulling heavy objects or bending appear to be mildly to moderately impaired. . . ." (T. 440.) The ALJ found that Plaintiff had the RFC to lift/carry a maximum of 25 pounds frequently and a maximum of 50 pounds occasionally, never climb ladders, ropes, or scaffolds, and is restricted to frequent handling and fingering with the left upper extremity.

---

[2] Plaintiff was bitten by a copperhead on the thumb on his left hand. (T. 439.)

(T. 26.)

As a threshold matter, Plaintiff has provided no legal authority or any legal argument as to why Dr. Rehfield's finding that Plaintiff's ability to grip on the left side and to finely manipulate objects on the left was moderately to severely impaired at the time of the examination is inconsistent with the ALJ's RFC that Plaintiff was limited to frequent handling and fingering with the left hand. Moreover, the RFC is supported by substantial evidence in the record, including the opinions of the two state agency physicians who found that a limitation to frequent handling and fingering with the left extremity was appropriate. (T. 448, 451, 554, 557.) In fact, the two state agency physicians explicitly considered the opinion of Dr. Rehfield and found it was consistent with their recommended limitations. (T. 451, 557.) The Court finds that the ALJ's RFC determination is supported by substantial evidence in the record and remand is not required.

### C. The ALJ's Finding that Plaintiff Could Perform his Past Relevant Work is Supported by Substantial Evidence in the Record

The ALJ found that Plaintiff was capable of performing his past relevant work in salvage and as a carpenter. (T. 36.) The ALJ found that

Plaintiff was capable of performing this past work as it was actually and generally performed. (Id.) Plaintiff, however, contends that remand is required because the ALJ's determination that Plaintiff could perform his past relevant work as a carpenter is inconsistent with his RFC because Plaintiff noted that he also roofed, which would require the climbing of ladders or scaffolding. (Pl.'s Mot. Summ. J. 14-15.)

In reaching his determination, the ALJ posed a hypothetical question to the vocational expert that incorporated the same RFC as Plaintiff. (T. 64.) The vocational expert testified that Plaintiff could perform his past work in salvage and carpentry despite the fact that he could not climb ladders or ropes. (T. 65.) Plaintiff does not contend that the hypothetical was improper or that it did not fully describe Plaintiff's impairments. See e.g., Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Because the hypothetical to the vocational expert was proper and fairly set out all of Plaintiff's impairments, the ALJ was entitled to rely on the testimony of the vocational expert that Plaintiff could return to his past work in carpentry and salvage, and the determination of the ALJ is supported by substantial evidence in the record. See Courtney v. Astrue, No. 2:11cv28, 2012 WL 1944869 (W.D.N.C. May 30, 2012) (Reidinger, J.); Cosom v. Astrue, No. 2012 WL

1898921 (W.D.N.C. Feb. 23, 2012) (Cayer, Mag. J.); Doll-Carpenter v. Comm'n of Soc. Sec., No. 4:11cv28, 2012 WL 5464956 (W.D. Va. May 7, 2012). Even assuming that the ALJ did err in finding that Plaintiff could perform his past work as a carpenter as it was actually performed, such error was harmless and would not require remand because Plaintiff does not challenge the finding that Plaintiff could perform the job of carpenter as it is generally performed in the national economy or the conclusion that Plaintiff could perform the job of salvage. See SSR 82-62, 1982 WL 31386 (1982). Accordingly, the Court finds that the determination of the ALJ at step four was supported by substantial evidence in the record.

**D.    The ALJ did not err in his Credibility Determination**

As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical

impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonable be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2);

Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity of the claimant's pain and symptoms; (3) factors that predicate or aggravate the claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes in order to alleviate the pain or symptoms; (5) any treatment other than medication that claimant received to alleviate the pain or symptoms; (6) any additional measure that claimant used to relieve the pain or symptoms; (7) any other factors concerning claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

Here, the ALJ applied this two step process in assessing Plaintiff's statements regarding his symptoms. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. (T. 35.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC assessment." (Id.) The ALJ found that Plaintiff was not so limited in his daily activities as he alleged in his

testimony. (T. 34.) The ALJ reached this conclusion after an exhaustive review of the medical evidence and the other evidence in the record and provided a comprehensive analysis setting forth specific reasons for why he found Plaintiff's testimony not fully credible. (T. 33-36.)

Upon a review of the medical records and the transcript of the hearing, the Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence in the record. See SSR 96-7p. Although Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility, what Plaintiff is actually asking this Court to do is re-weigh the evidence in the record, accord more weight to the evidence supporting Plaintiff's possession, and come to a different conclusion than the ALJ as to Plaintiff's credibility. It is not this Court's role, however, to determine whether Plaintiff's testimony was credible. Craig, 76 F.3d at 589. Because it is clear from the record that the ALJ applied the correct legal standard in assessing Plaintiff's credibility and the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence in the record, the Court finds that Plaintiff's contention that the ALJ erred in assessing Plaintiff's credibility is without merit.

**VI. Conclusion**

The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 15], **DENY** the Plaintiff's Motion for Judgment on the Pleadings [# 11], and **AFFIRM** the Commissioner's decision.

Signed: December 4, 2012

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).